## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MALIK ROBERTSON,**<br>        **Plaintiff,** | **CIVIL ACTION** |
| **v.** | **NO. 16-1928** |
| **CHRISTIAN FENICO, et al.,**<br>        **Defendants.** | |

## MEMORANDUM RE: MOTION FOR SUMMARY JUDGMENT

Baylson, J.                                                          March __29__ , 2018

## I.      Introduction

On June 24, 2011, Plaintiff Malik Robertson was stopped by Philadelphia police officers and arrested after matching the physical description of a shooting suspect provided by three witnesses.  In 2016, he filed suit against the police officers who had arrested him, Defendants Christian Fenico and Kathleen Barr, alleging malicious prosecution.  For the reasons stated below, the Court hereby **GRANTS** Defendants' motion for summary judgment.

## II.     Background

The following facts are undisputed.  At 10:56 AM on June 24, 2011, Plaintiff was stopped by Defendants near the intersection of 29th and Vare Streets in Philadelphia, Pennsylvania in regards to a shooting that had occurred that morning at 2806 Cantrell Street in Philadelphia.  (Police Report, ECF 27-2.)  There is no dispute that at the time of his arrest, Plaintiff, a 24-year-old 6' 1" black male, was wearing a gray t-shirt with the word "PUMA" and gray shorts.  (Id.) (Pl.'s Fact Statement, ECF 31, ¶10.)

That day, three witnesses identified Plaintiff where he had been stopped by police and provided statements to officers identifying Plaintiff as either having fled the house at 2806

Cantrell Street or having been in the vicinity. (Defs.' SOF ¶¶ 3-8, ECF 27-1; Pl.'s SOF ¶¶ 3-8, ECF 31.)

In a statement provided to police dated that same day, June 24, 2011 at 12:30, Amoni Jones stated that she had stayed overnight at 2806 Cantrell Street and had been woken up by the sound of gunfire. (Jones Witness Statement at 1, ECF 27-3.) From where she was on the living room floor, she saw three black males whom she had never seen before "come running up from the basement." (<u>Id.</u>) After seeing her cousin Lekirr Brown bleeding from the face and stomach, and calling a friend, she called the police. (<u>Id.</u>) She described the first of these men as "tall, maybe about 6' 0", brown skin…wearing a gray shirt with 'PUMA' written in white and gray shorts. He looked like he might be 21 years old." (<u>Id.</u> at 2.) Jones stated that when police took her to where "the dark skin male wearing the 'PUMA' shirt" had been stopped at 29th and Winton, she identified Plaintiff as "one…of the males I saw running from the basement." (<u>Id.</u>)

Vanessa Brown, whose sister lived at 2806 Cantrell Street, was also taken to the location where Plaintiff was stopped. (Vanessa Brown Witness Statement at 1, ECF 27-5.) In a statement dated 12:00 PM on June 24, 2011, Vanessa stated that she had seen "three guys walking back and forth" "for a couple of hours" outside 2806 Cantrell Street. She described the first of these men as a 24-26 year-old black man of medium build wearing a gray Puma shirt, grey hat, gray pants. (Id.) According to Vanessa's description, he was clean shaven, 6' tall, and had a dark complexion. (<u>Id.</u>) Although Vanessa did not see the men enter the house because she was at the pharmacy until after police arrived or see any of them with a gun, she observed the men "looking at my sister's house" "when they walked by each time." (<u>Id.</u>) When police "took [her] to 2800 Winton Street" she "identified all of them." (<u>Id.</u>)

Linda Brown gave a statement to police dated 12:58 PM on June 24, 2011, in which she had stayed overnight at 2806 Cantrell Street. (Linda Brown Witness Statement at 1, ECF 27-7.) While sitting on the front steps that morning with her sister Vanessa Brown and her friend Joan, she had seen a black man "wearing all gray" who walked up to the steps of 2806 Cantrell Street and "bought cigarettes from Joan," then "walked past [her] house again." (Id.) Linda Brown left the house at approximately 10:06 AM and went to work, but returned home after being informed of the shooting at her house. (Id. at 1-2.) When police took Linda to "29th & Winton Street, by Vare Avenue," Linda "looked at the guy [Plaintiff] and told the Officers that he was the same guy I saw lurking on the corner this morning." (Id. at 2.) Linda described him as "tall, about 6'0", dark brown skin, wearing a gray t-shirt and gray shorts…in his early 20's (21-22)." (Id.) She did not see him with anyone else before leaving for work. (Id.)

All three witnesses identified Plaintiff as the man in the gray PUMA shirt at his preliminary hearing or at his criminal trial. (Prelim. Hearing Tr., ECF 27-4, ECF 27-8; Trial. Tr., ECF 27-6). It is undisputed Plaintiff was acquitted at trial on April 28, 2014. (Am. Compl. ¶ 36, ECF 6.)

At their depositions, Defendant police officers testified they had received a "flash" description of the suspects while responding to a call about the shooting at 2806 Cantrell Street and observed Plaintiff running away while they were driving to the site of the shooting. (Barr Dep 7:1-8:7; Fenico Dep. 10:23-24, ECF 29.) Defendant Barr, who had placed Plaintiff in handcuffs, testified that another officer who was at the 2806 Cantrell Street house had told her that one of the suspects was wearing a gray Puma shirt. (Barr Dep. 15:20-16:10.) At his deposition, Plaintiff testified that he had not run away from police, but stated that he had been

wearing a gray Puma shirt and gray shorts on the day he was arrested. (Robertson Dep. 14:6-16:2, ECF 29.)

### III.    Procedural History

On April 22, 2016, Plaintiff filed a Complaint in this Court against Defendants Fenico and Barr, the City of Philadelphia, and approximately two dozen other police officers, alleging RICO violations, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. (Compl., ECF 1.)

On June 29, 2016, Plaintiff filed an Amended Complaint (ECF 6), the operative complaint in this litigation, alleging three counts against Defendants Barr and Fenico:

1)  false imprisonment;

2)  malicious prosecution in violation of the Fourth Amendment; and

3)  intentional infliction of emotional distress.

After Defendants moved to dismiss the false imprisonment and intentional infliction of emotional distress counts as time-barred on June 30, 2016 (ECF 7), the parties stipulated to the dismissal of those counts (ECF 11). That stipulation was approved by Order of this Court (ECF 12) on August 12, 2016, leaving only the malicious prosecution claim.

After discovery, Defendants moved for summary judgment on the malicious prosecution claim on July 17, 2017 (ECF 27). Plaintiff responded to the motion on January 2, 2018 (ECF 29). The Plaintiff's response did not strictly comply. The Court entered an Order (ECF 30) on January 11, 2018 allowing Plaintiff ten days to submit a statement of facts in compliance with this Court's practices and procedures. However, on January 12, 2018, Plaintiff simply resubmitted the same statement of facts (ECF 31). Nonetheless, the Court will consider Plaintiff's opposition on the merits.

Oral argument was held on the motion for summary judgment on March 28, 2018.

## IV.    Legal Standard

Summary judgment is appropriate if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. Summary judgment is appropriate if the non-moving party fails to rebut the motion by making a factual showing "that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## V.    Discussion

### A. Malicious prosecution

To establish a claim for malicious prosecution under the Fourth Amendment and 42 U.S.C. § 1983, a plaintiff must establish that "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept

of seizure as a consequence of a legal proceeding." Curry v. Yachera, 835 F.3d 373, 379 (3d Cir. 2016).

Defendants argue that summary judgment is warranted for three reasons: first, that probable cause existed to arrest Plaintiff; second, that Defendants are entitled to a defense of qualified immunity; and third, that Defendants did not misrepresent or conceal evidence.

### 1. Probable Cause

Defendants argue that because probable cause existed to arrest Plaintiff as a result of the three witness identifications, his malicious prosecution claim fails as a matter of law. Plaintiff responds that Defendants lacked probable cause to arrest him because none of the witnesses saw him commit a crime or with a gun, and their descriptions varied in certain respects.

The Third Circuit has held that "[a] finding of probable cause is … a complete defense" to a malicious prosecution claim. Goodwin v. Conway, 836 F.3d 321, 327 (3d Cir. 2016) (affirming grant of summary judgment on malicious prosecution claim where probable cause existed). Although it is typically "appropriate for a jury to determine whether probable cause existed," summary judgment "if a court concludes that 'the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding.'" Dempsey v. Bucknell Univ., 834 F.3d 457, 468 (3d Cir. 2016) (alteration original) (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

A "warrantless arrest by a law officer" must be supported by probable cause. Devenpeck v. Alford, 543 U.S. 146, 152 (2004). In the Third Circuit, "[p]robable cause to arrest exists when the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested." Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000).

When reviewing whether probable cause existed for an arrest, courts evaluate the "totality of the circumstances," Goodwin, 836 F.3d at 327, assessing whether those facts and circumstances were inculpatory or exculpatory, and weigh the inculpatory evidence against the exculpatory evidence from the point of view of the officers. Wilson v. Russo, 212 F.3d 781, 791 (3d Cir. 2000) (affirming summary judgment where robbery victim provided "forceful positive identification"). Thus, the inquiry for a court evaluating a probable cause determination in a malicious prosecution case is "whether the totality of the circumstances was sufficient to justify a reasonable belief on the part of the officers" that the plaintiff had committed a crime. Wright v. City of Philadelphia, 409 F.3d 595, 603 (3d Cir. 2005).

Defendants cite two unpublished Third Circuit opinions, Young v. City of Wildwood, 323 F. App'x 99 (3d Cir. 2009) and Tisdale v. City of Philadelphia, 688 F. App'x 136 (3d Cir. 2017), in which the Third Circuit found that probable cause for warrantless arrests existed based on eyewitness identifications and affirmed the district court's grants of summary judgment.

Here, the inculpatory evidence is strong: the officers stopped Plaintiff based on the "flash" description, and Amoni Jones identified Plaintiff only a few hours after the shooting as one of the men who had run out of the basement where the shooting had occurred. Another two eyewitnesses, Linda and Vanessa Brown, described Plaintiff within a few hours of the shooting as having been near 2806 Cantrell Street and looking at the house prior to the incident. All three women identified Plaintiff—at that point handcuffed—where he had been stopped by officers not far from the site of the shooting, and described him as a 6'0"-6'1" black man between 21 and 26 years old who was wearing all gray. The most incriminating fact is that when Plaintiff was arrested, Plaintiff does do not dispute that he was wearing the a gray "PUMA" shirt and witness

Jones had told the police that the strange man in her basement at the time of the shooting matched Plaintiff's description and also was wearing a gray "PUMA" shirt.

As Plaintiff notes, none of these women actually witnessed the shooting itself or saw Plaintiff with a gun. A few discrepancies appear from the record among these accounts: whether he was wearing gray shorts, as Amoni and Linda stated, or gray pants, according to Vanessa; and Plaintiff was clean-shaven, as Vanessa stated, or, as described in the police report, had facial hair. However, the Third Circuit has found probable cause even when the discrepancies in description were more substantial. See, e.g., Tisdale, 688 F. App'x at 138 (probable cause existed despite disputes about the color of plaintiff's shirt and hat) Wilson, 212 F.3d at 791 (probable cause existed where plaintiff was 4-7 inches shorter than original description). Plaintiff further cites no authority that probable cause requires witnesses to have observed the commission of a crime, or to have seen a suspect with a weapon.

The totality of the circumstances, particularly the three identifications, was sufficient to justify a reasonable belief on the part of Defendants that Plaintiff had been involved in the shooting. Accordingly, probable cause existed for Defendants' warrantless arrest, and Defendants are therefore entitled to summary judgment on Plaintiff's malicious prosecution.

### 2. Qualified Immunity

The doctrine of "qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

The test for qualified immunity is a "two-pronged inquiry." Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014). The first prong concerns whether the "conduct" of a government official

"violated a [federal] right [.]"  Id. (alteration original).  "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation."  Id. at 1866.  Courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis" to tackle first.  Pearson, 555 U.S. at 236.

A "clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right" such that "existing precedent must have placed the statutory or constitutional question beyond debate."  Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted) (warning courts "not to define clearly established law at a high level of generality").  When evaluating claims that the right asserted was clearly established, courts in the Third Circuit "look first for applicable Supreme Court precedent," but "[i]f none exists," courts then "consider whether there is a case of controlling authority in our jurisdiction or a robust consensus of cases of persuasive authority in the Courts of Appeals [that] could clearly establish a right for purposes of qualified immunity."  Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017) (quotations and citations omitted).

Thus, because lack of probable cause is an element of malicious prosecution, arresting police officers, such as Defendants, are entitled to qualified immunity "if a reasonable officer could have believed that probable cause existed" to arrest Plaintiff "in light of clearly established law and the information the [arresting] officers possessed."  Blaylock v. City of Philadelphia, 504 F.3d 405, 411 (3d Cir. 2007) (quoting Hunter v. Bryant, 502 U.S. 224, 228-29 (1991)) (alteration original).  See also Goodwin, 836 F.3d at 329 (finding defendant officers were entitled to qualified immunity on malicious prosecution where probable cause existed).

Even had probable cause not existed to arrest Plaintiff, Plaintiff has identified no apposite case law from any jurisdiction to the effect that Defendants violated clearly established law as of June 24, 2011 when they arrested him based on his matching the description from police and on the identification of three eyewitnesses, one of whom had stated to police that she had seen Plaintiff running away from the scene of a shooting less than two hours before. This Court has found no such precedent. Accordingly, Defendants are entitled to summary judgment based on a defense of qualified immunity.

### 3. Defendants' malicious acts

Defendants also argue that they did not act with malice in arresting Plaintiff. Plaintiff responds, somewhat unclearly, that the conflicting deposition testimony regarding whether he ran away from police immediately before being stopped, was both relevant to the issue of probable cause and created a triable issue on whether Defendants had acted with malice. Plaintiff asserts that Defendants' contention that Plaintiff had attempted to evade arrest "was an untruthful statement from both Defendants Barr and Fenico and obscured the Philadelphia District Attorney's Office from being able to make a fair and independent judgment about the merits of prosecution in the instant matter." (Pl.'s Opp. to Summ. J. at 14.)

As discussed above, malice is one of the elements of a malicious prosecution claim. See McKenna v. City of Philadelphia, 582 F.3d 447, 461 (3d Cir. 2009) (affirming grant of judgment as a matter of law where plaintiffs produced insufficient evidence of malice). In the context of a Fourth Amendment malicious prosecution claim, "[a]ctual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." Henderson v. City of Philadelphia, 853 F. Supp. 2d 514, 519 (E.D. Pa. 2012) (quoting Lee v.

<u>Mihalich</u>, 847 F.2d 66, 70 (3d Cir. 1988)).  Malice may also "be inferred from the absence of probable cause."  <u>Id.</u> (quoting <u>Lippay v. Christos</u>, 996 F.2d 1490, 1502 (3d Cir. 1993)).

However, there is no record evidence about what Defendants represented to the Philadelphia District Attorney's Office as to whether Plaintiff attempted to flee.  The police investigation report states nothing about whether he had not evaded arrest, only "Positive ID by 3 witnesses," next to which a box was marked indicating that Plaintiff had been arrested.  (Police Report, ECF 27-2.)

Plaintiff himself concedes that to survive summary judgment, he must come forth with evidence sufficient to create a triable issue on each of the five prongs of a malicious prosecution claim, or else his claim fails as a matter of law.  (Pl.'s Opp. to Summ. J. at 12 (quoting <u>Domenech v. City of Philadelphia</u>, No. CIV.A. 06-1325, 2009 WL 1109316, at *9 (E.D. Pa. Apr. 23, 2009), <u>aff'd,</u> 373 F. App'x 254 (3d Cir. 2010.)))  Thus, whether or not Defendants falsely stated to the District Attorney that Plaintiff fled arrest, Defendants are entitled to summary judgment on the grounds that probable cause existed for the arrest and to a defense of qualified immunity.

## VI. Conclusion

For the reasons stated above, the Court hereby **GRANTS** Defendants' motion for summary judgment.  An appropriate order follows.

O:\CIVIL 16\16-1928 Robertson v Fenico\16cv1928 Memorandum on MSJ.docx